IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.      ) | Case No. 3:22-cr-92-HEH |
| ) | |
| JEEL N. PATEL,  ) | |
| ) | |
| *Defendant*.  ) | |

**STATEMENT OF FACTS**

The United States and the defendant agree and stipulate that the allegations in the Indictment and the following Statement of Facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Beginning in around February 2020, the exact date being unknown, and continuing through on or about June 30, 2020, in the Eastern District of Virginia and elsewhere within the jurisdiction of this Court, the defendant JEEL N. PATEL knowingly conspired with others, known and unknown, to execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing that scheme and artifice to defraud: (a) delivered and caused the delivery of matter by private and commercial interstate carriers; and (b) transmitted and caused to be transmitted writings, signs, and signals in interstate and foreign commerce.

2. The purpose of this conspiracy was to use various schemes to defraud victims of money, which the conspirators then used to unlawfully enrich themselves.

3. Conspirators primarily contacted and communicated with victims by telephone. Calls to victims originated from several call centers in India. This contact typically started with automated, previously recorded calls, commonly known as "robocalls." To conceal the

international origins of the above-described calls, conspirators spoofed the phone number that would appear on a victim's caller ID so that what was displayed was a US-based phone number. These robocalls contained messages designed to create a sense of urgency with the call recipient and included instructions for next steps the victim was to take. Recipients would be instructed to hold the line or call back a particular number to speak with someone about the serious matter. Eventually victims would speak with one or more live persons referred to within the conspiracy as "closers." Closers persuaded victims to send money to addresses controlled by, or accessible to, other conspirators. To accomplish their goals closers used a variety of scripts incorporating different fraud schemes. Two such scripts that were representative, though not exhaustive of those used by the conspiracy, are described below.

4. One frequently used script involved conspirators impersonating an official with a law enforcement agency, such as the Federal Bureau of Investigation ("FBI") or the Drug Enforcement Administration ("DEA"). Closers would convince victims that they were the subjects of criminal investigations, often involving the prospective seizure of all of the victims' financial assets. Victims would be persuaded, coerced, and cajoled to ship packages of cash to particular addresses that were supposedly connected to the government agency. This, the victims were told, would help them avoid immediate drastic consequences, including arrest and prosecution. Victims were promised that the money would be returned to them, sometimes with interest, if they were ultimately cleared of wrongdoing.

5. A second script involved a variation of the above, with closers falsely claiming to be acting on behalf of a federal agency like the Social Security Administration or the Internal Revenue Service. The Social Security imposters convinced victims that for one reason or other funds had been depleted from their retirement accounts. Victims were compelled to send cash to

replenish depleted retirement funds. The IRS imposters persuaded victims that they had tax problems and included threats of arrest or seizure of the victims' home or bank accounts. Victims of those schemes sent money to correct their supposed outstanding tax bills.

6. Conspirators instructed victims to send bulk cash through various means, including via the U.S. Postal Service ("USPS") and private, interstate commercial carriers, such as FedEx and UPS, using shipping methods that provided tracking numbers, which numbers the conspirators instructed victims to provide to various conspiracy members. The victims were further instructed to send the parcels to addresses that the conspiracy controlled or had access to. Conspirators shared the tracking numbers amongst themselves to track the package and coordinate retrieval of victims' parcels. A primary method of communication used by the conspirators was the secure messaging application called WhatsApp.

7. A few later victims of the conspiracy were convinced to leave the cash in a bag or box in front of their residences or give the cash personally to a government official who would meet them at their homes. The conspirators referred to the retrieval of these victims' cash as "home pickups."

8. Conspirators known as "money mules" would retrieve the victims' packages that had been shipped by parcel or were ready for pickup at the victims' residence. After retrieving the victims' cash, the "money mules" typically videoed themselves counting the cash. They would then send these videos to their supervisors in the U.S. and India via WhatsApp to prove how much money had been received. After reserving for themselves a small portion of the victims' money as their payment, the money mules would forward the money to their supervisors and ultimately back to India. In addition to depositing funds into bank accounts, very often these

funds were delivered to hawala agents. Hawala is an informal money transfer system that is popular in Africa, the Middle East, and South Asian countries, including India.

9. The defendant, JEEL PATEL, worked as a money mule for Bhavinkumar "Sunny" Patel, who was prosecuted in this Court in case number 3:21-cr-47. Sunny Patel had himself worked as a money mule for Pradipsinh Parmar, who was also prosecuted in this Court, case number 3:19-cr-160. In June 2019, Sunny Patel decided to create his own network of money mules and work directly with his contacts in India. His network picked up packages in New Jersey, Pennsylvania, Ohio, Michigan, Illinois, South Carolina, and Virginia at multiple addresses located in the greater Richmond area, which is in the Eastern District of Virginia.

10. JEEL PATEL joined Sunny Patel's conspiracy in around February 2020. During his time in the conspiracy, the defendant, often in the company of other conspirators, participated in the retrieval of a total of 14 packages of cash from victims involving a combination of parcel shipments and home pickups. These occurred in the states of Michigan, Ohio, and South Carolina. PATEL participated in multiple home pickups with two victims, including three home pickups from a victim in Southfield, Michigan, identified herein as C.M., and two home pickups from a victim in Jonesville, S.C., identified herein as L.M. The estimated[1] total actual losses were $485,020, with estimated intended losses of $519,320. The defendant's participation in the conspiracy ended on June 30, 2020, when deputies with the Union County, South Carolina, Sheriff's Office arrested the defendant when he was attempting to make a third home pickup at the home of victim L.M.

---

[1] Consistent with the government's practice that has been approved by the Court during sentencing in cases related to the defendant's, the government used an average loss figure of $10,000 to estimate loss when there was compelling evidence that a victim had sent cash but the actual loss amount could not be determined due to an inability to interview the victim. In JEEL PATEL's case the $10,000 estimate was used for one FedEx shipment.

4

11. The automated and live-person calls placed by conspiracy members to victims were wire transmissions that passed in interstate and foreign commerce, thus satisfying the jurisdictional element for wire fraud, in violation of 18 U.S.C. § 1343. The conspirators' persuading and causing victims to send parcels of cash via the commercial carriers FedEx and UPS, along with the USPS, were mailings that satisfied the jurisdictional element for mail fraud, in violation of 18 U.S.C. § 1341.

12. Defendant now admits that between at least February 2020 and June 2020, he knowingly and intentionally conspired with others known and unknown to execute and attempt to execute a scheme to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises; that, for the purpose of executing the scheme and artifice to defraud, conspirators delivered and caused the delivery of matter by private and commercial interstate carriers and transmitted and caused to be transmitted writings, signs, and signals in interstate and foreign commerce; and that, in furtherance of this conspiracy, he knowingly committed, aided, abetted, induced, counseled, and encouraged the acts described herein with the specific intent to defraud.

13. The defendant acknowledges that the foregoing Statement of Facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities. This Statement of Facts includes those facts necessary to support the Plea Agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

14.  The defendant further acknowledges that he committed the charged offense knowingly and voluntarily, and not by accident or mistake.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Brian R. Hood
Assistant United States Attorney

After consulting with my attorney and pursuant to the Plea Agreement entered into this day between the defendant, JEEL N. PATEL, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

9/15/22                              _____
Date                                 JEEL N. PATEL
                                     Defendant

I am counsel for defendant, JEEL N. PATEL. I have carefully reviewed this Statement of Facts with him and, to my knowledge, his decision to agree to this Statement of Facts is an informed and voluntary decision.

9/15/22                              _____
Date                                 Paul C. Galanides, Esquire
                                     Counsel for Defendant

6