**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:22-cr-92-HEH |
| | ) | |
| JEEL N. PATEL, | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>UNITED STATES' POSITION ON SENTENCING</u>

The United States of America, through undersigned counsel, submits the following position regarding the sentencing of defendant JEEL N. PATEL (hereafter "PATEL"). The United States has noted a typographical error in the defendant's Presentence Report (PSR) in which an incorrect Total Offense Level was used to calculate the defendant's Guidelines range. In reviewing various Guidelines provisions, the PSR determined a Total Offense Level (TOL) of 24. (PSR ¶ 45). However, when calculating the defendant's Guideline range, the PSR used a TOL of 22. (PSR ¶ 68). This lower TOL yielded a Guidelines range of 41–51 months rather than the correct range of 51–63 months obtained using a TOL of 24.

While an objection to the PSR in these circumstances is technically appropriate, the government does not believe that an objection is materially necessary. It had been the government's intention to recommend a sentence at the low end of the correct Guidelines range, i.e., 51 months, which is the high end of the incorrect Guidelines range currently set forth in the PSR. Accordingly, the United States recommends that the Court sentence the defendant within the Guidelines range to 51 months' incarceration.

## Discussion

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns.  First, the court must correctly calculate the applicable Guidelines range.  *See Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors."  *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted).  To the extent the Court deems some deviation from the Guidelines range appropriate, the Court must give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal quotation marks omitted).  In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a).  *See id.* at 364.

I.  THE PRESENTENCE REPORT AND THE APPLICABLE GUIDELINES RANGE.

As noted above, the PSR's Guidelines determinations are correct apart from the final calculation of the applicable sentencing range.  Rather than object to the obvious scrivener's error pertaining to the defendant's Total Offense Level, the United States instead asks that the Court sentence the defendant to the high end of the Guidelines range.

II.  THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 SUPPORT A GUIDELINE RANGE SENTENCE.

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In determining a particular sentence to be imposed, the Court shall consider:

(1)     the nature and circumstances of the offense, and the
        history and characteristics of the defendant; and

(2)     the need for the sentence imposed—

        (A)     to reflect the seriousness of the offense, to promote respect
                for the law, and to provide just punishment for the offense;

        (B)     to afford adequate deterrence to criminal conduct;

        (C)     to protect the public from further crimes of the defendant; and

        (D)     to provide the defendant with needed educational or
                vocational training, medical care, or other correctional
                treatment in the most effective manner.

The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct" and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(6), (7)[1].  To arrive at the appropriate sentence, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it."  *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

## A.     Nature and Circumstances of the Offense

JEEL N. PATEL is yet another defendant who has appeared before this Court to face justice for his conduct in support of a fraud conspiracy originating with call centers located in India.  The Court is now very familiar with these schemes, which start with automated "robocalls" from these overseas call centers and continue with human conspirators called "closers" who use a variety of scripts to trick and coerce victims to send money to the conspiracy.  The victims, who are disproportionately elderly, were typically threatened with

---

[1] Section 3553(a) also requires consideration of the kinds of sentences available, the applicable Guidelines range, and pertinent policy statements issued by the Sentencing Commission.  *See* 18 U.S.C. § 3553(a)(3)(4), (5).

arrest by FBI or DEA agents, or alternatively told that their Social Security benefits accounts have been emptied and need to be replenished. Victims would then wire funds to accounts controlled by the conspiracy, or ship bulk cash via parcel services to addresses to which conspirators have access. Once the victims had sent the money, other conspirators commonly referred to as "money mules" retrieved the victims' money, took their cut, and forwarded the bulk of the funds on to the call center operators in India.

Defendant JEEL N. PATEL was one such money mule who was part of a cell of couriers operating in several states under the direction of Bhavinkumar "Sunny" Patel, who was prosecuted in this Court in case number 3:21-cr-47. As reflected in the Statement of Facts accompanying his guilty plea and the PSR (¶ 17), the defendant participated in retrieving or attempt to retrieve 14 packages of cash from 10 different victims, with total estimated total actual losses of $485,020 and total intended losses of $519,320.

Unlike the other money mule defendants who have so far appeared before this Court, the defendant participated in several "home pickups." In these home pickups, the defendant and one or more cohorts went directly to a victim's residence to retrieve the cash. Most home pickups involved collecting a bag or parcel of cash that had been placed out front by the victim. In at least one of these home pickups a conspirator tried to take the package of cash directly out of the victim's hands (PSR ¶ 51). These home pickups included three visits to an 80-year-old victim in Southfield, Michigan, and three visits, the last one culminating in the defendant's arrest, to the home of an 82-year-old victim in Union County, South Carolina.

### B.      History and Characteristics of the Defendant

PATEL is 22 years old and has no known criminal history prior to this offense.  He was raised by his parents in the state of Gujarat in western India.  (PSR ¶ 53).  When growing up in India his parents worked as farmers; they have since moved to South Carolina where his father works for an auto company and his mother works in an Amazon fulfillment center. (*Id*.)  The defendant recalls having a "decent" life growing up during which his basic needs were satisfied and there were no issues of abuse in the household.  (PSR ¶ 54).  The defendant and his family immigrated to the United States in 2017, initially living in Canton, Ohio, and later moving to Duncan, South Carolina, in 2020.  (PSR ¶ 55).

The defendant is a lawful permanent resident, or "green card" holder, who may be subject to deportation because of his conviction.  (PSR ¶ 55).  He has never been married and has no children (PSR ¶ 57).  Aside from having insomnia and some other unspecified ailments, he is not taking any prescribed medication and would appear to be in overall good health.  (PSR ¶¶ 58 and 59).  He describes himself as a social drinker and denies having a history of substance abuse.  (PSR ¶ 60).  PATEL, a high school graduate, has some college education (PSR ¶¶ 61-62) and a modest work history (PSR ¶¶ 63–65).

### C.      Seriousness of the Offense

The scope of fraud perpetrated through robocalls from overseas call centers is truly enormous.  According to the Federal Trade Commission, in 2019 it received nearly 400,000 complaints alleging imposter fraud claims totaling $152.9 million, which government officials suspect substantially underestimates the extent of fraud because many victims do not

report their losses[2].  As seen from the evidence in this case as well as related cases heard by this Court, a disproportionate percentage of those victims are elderly.  There can be no dispute, then, that the defendant's offense of conviction is a serious one.  And while his involvement in the conspiracy was less than others, and substantially less than the ringleaders, a Guideline range sentence of incarceration is required nonetheless to adequately punish his conduct.

      **D.**     **Need to Deter Future Criminal Conduct and Promote Respect for the Law**

PATEL knowingly participated in a crime that had significant consequences for victims.  A Guidelines range sentence of imprisonment would provide sufficient deterrence from future criminal conduct by this defendant.

The Court must also consider how to deter others as a general matter from engaging in similar conduct.  *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences.  If either is eliminated or minimized, the deterrent effect is proportionally minimized.").  Absent a term of imprisonment available to punish participation in the scourge of robocall fraud schemes, general deterrence — "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow" — will not be achieved.  *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976).  A Guidelines range sentence is necessary

---

[2] https://www.reuters.com/article/us-usa-robocalls-fraud/u-s-files-lawsuits-over-robocall-scams-cites-massive-financial-losses-idUSKBN1ZR2SM

to send the appropriate message to both PATEL and others that those who engage in this conduct will be caught and punished significantly.

**E.      Need to Protect the Public from the Defendant's Future Criminal Conduct**

A Guidelines range sentence of 51 months would provide adequate protection to the public from future criminal conduct by the defendant.

**F.      Substance Abuse and Mental Health Treatment or Vocational Training**

As noted above, the defendant has no known treatment needs.

**G.      Need to Avoid Unwarranted Sentencing Disparities**

There is no compelling reason to treat PATEL differently from those who have engaged in comparable criminal conduct.  In many respects the defendant's conduct and Guidelines range is similar to defendant Sumer Patel, who is not biologically related to the defendant but was prosecuted in a related case, number 3:19-cr-160-005.  (PSR ¶ 12).  Sumer Patel was a money mule who was held accountable for total losses of just over $300,000, thus receiving the same loss amount enhancement of 12 points under §2B1.1(b)(1)(G) that is applicable in JEEL PATEL's case.

The one significant difference between Sumer Patel and JEEL PATEL is that JEEL PATEL traveled repeatedly to two victims' homes, one of whom he knew to be "75-80 years old," to pick up cash directly from them.  The defendant thus properly receives a 2-point enhancement that was not applicable in Sumer Patel's case for knowingly participating in an offense involving two vulnerable victims, i.e., elderly victims who were repeatedly targeted by the conspiracy.  Sentencing JEEL PATEL to 51 months' incarceration would properly account for that additional aggravating factor while otherwise remaining consistent with the

punishment imposed on Sumer Patel and other similar money mule defendants who have appeared before this Court.

**CONCLUSION**

For the reasons discussed above, the United States respectfully requests that the Court impose a sentence of 51 months incarceration.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:     _/s/   Brian R. Hood_____
        Pennsylvania Bar No. 74635
        Senior Litigation Counsel
        United States Attorney's Office
        919 East Main Street, Suite 1900
        Richmond, VA 23219
        Telephone: (804) 819-5400
        Facsimile: (804) 771-2316
        Email: brian.hood@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **January 6, 2023**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:    /s/   Brian R. Hood
Pennsylvania Bar No. 74635
Senior Litigation Counsel
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Facsimile: (804) 771-2316
Email: brian.hood@usdoj.gov